UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY BARLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19CV497-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Anthony Barley has appealed from an administrative law judge's denial of his applications for Social Security disability insurance benefits and supplemental security income. In doing so, Barley claims that the ALJ committed four errors which require a reversal of his decision, but I will limit my discussion to two: whether the Appeals Council erred in analyzing the consultative examiner's medical opinion, and whether the ALJ erred in analyzing Barley's need for a cane. Because I find that the ALJ erred in the analysis of the consultative examiner's medical opinion and Barley's alleged need for a cane to ambulate effectively, I will REVERSE the ALJ's decision and REMAND on these issues.

### Background

Anthony Barley applied for disability insurance benefits and supplemental security income on May 17, 2016, claiming that he was disabled as of November 20,

2015. [A.R.[1]  20.] His claim was denied initially and denied again upon reconsideration. After that, he requested and had a hearing before an Administrative Law Judge on December 6, 2017. On July 2, 2018, the ALJ issued his written decision which once again denied Barley benefits. He then took his case to the Social Security Appeals Council. On September 21, 2019 the Appeals Council granted Barley's request for review. [A.R. 1.] The Appeals Council identified and corrected errors it found in the ALJ's decision, which included admitting treatment records and assigning weight to a nontreating physician's opinion. [A.R. 4.] However, the Appeals Council adopted the rest of the ALJ's decision and found that Barley was not disabled through the date of the ALJ's decision, July 2, 2018. [A.R. 4-8.] Barley now seeks review of that decision.

      In the written decision, the ALJ determined that Barley had severe impairments of degenerative joint disease in the hips, status post open reduction and internal fixation of a left hip fracture, degenerative changes in both knees, osteopenia, status post right ankle fracture requiring surgical repair with hardware, and chronic hepatitis C. [A.R. 23.] The ALJ also found that Barley had a variety of nonsevere impairments, including GERD/acid reflux, esophagitis, hiatal hernia, gastritis, rib fractures, a punctured lung, folliculitis, low vitamin D level, tremors, hypertension, and COPD. The ALJ then determined that Barley did not meet any of the applicable social security listings for disability. Specifically, the ALJ examined listings 1.02 (major dysfunction of a joint(s)

---

[1] The Administrative Record [A.R.] in this case is found at Docket Entry # 9. Citations are to the page number in the lower right-hand corner of the A.R.

(due to any cause)), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), 5.02 (gastrointestinal hemorrhaging from any cause, requiring blood transfusion), 5.05 (chronic liver disease) and 5.08 (weight loss due to any digestive disorder).

At the next step, the ALJ determined Barley's residual functional capacity (RFC). He determined that Barley was capable of performing light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except for the following limitations: he is able to stand/walk for a total of just 4 hours in an eight-hour periods (and should remain seated the rest of the workday). He cannot climb ladders, ropes, or scaffolds. He cannot kneel or crawl. He can only occasionally climb ramps and stairs, balance, stoop, and crouch. He cannot work on slippery or uneven surfaces, around dangerous machinery, or at unprotected heights. [A.R. 27.] I won't repeat the ALJ's description of the medical evidence included in the written decision. [*See* A.R. 23-29.]

The ALJ then posed the RFC and some additional hypothetical questions to a vocational expert (VE) who testified whether or not such a hypothetical person with Barley's RFC could likely find gainful employment. The ALJ determined that Barley was unable to perform his past relevant work as a groundskeeper, either as performed or as generally performed. [A.R. 29-30.] However, he found that Barley could perform the jobs of office helper, routing clerk, and mail clerk/sorter, all of which exist in sufficient numbers in the national economy. As a result, the ALJ found that Barley was not disabled within the meaning of the Social Security Act and its regulations.

**Discussion**

In a Social Security disability appeal, my role as district court judge is limited. I do not review evidence and determine whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

My review is guided by the principle that "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate

discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

Barley argues that the ALJ and the Appeals Council erred in evaluating the opinion of consultative examiner Dr. Greer. [DE 12 at 20.] Dr. Greer opined that Barley would be able to walk half a block and could only stand for 5-10 minutes at a time. [A.R. 748.] Dr. Greer noted that Barley's peripheral pulses were difficult to palpate, and that his gait was ataxic with frequent flailing of limbs. [A.R. 749-50.] Dr. Greer further noted that Barley required a cane and could not ambulate without it. [*Id.*] Barley was also unable to walk on his heals or toes, tandem walk, or squat. [*Id.*] Under the neurological tests, Dr. Greer noted that Barley was unable to complete three of the neurological tests due to a gross intention tremor. [A.R. 751.] Dr. Greer also noted decreased range of motion in the left hip and the right ankle. [A.R. 752.] Finally, Dr. Greer opined that Barley's orthopedic complaints "do not appear to significantly limit ability to work," but she also noted that Barley presented to the evaluation with withdrawal symptoms due to his alcohol use disorder. [A.R. 753.]

In his decision, the ALJ did not discuss Dr. Greer's opinion outside of discussing Barley's alcohol use and noting that Dr. Greer opined Barley's orthopedic problems did not significantly limit his ability to work. [A.R. 25, 29.] The Appeals Council assigned Dr. Greer's opinion "some weight," finding her opinion that Barley's orthopedic impairments did not result in significant work-related limitations to be convincing. [A.R. 6.] The Appeals Council acknowledged some of the "abnormal findings," but

found that Barley's normal strength, posture, and normal range of motion were more persuasive. [*Id*.] The Appeals Council also found that Dr. Greer's opinion was less persuasive because it was a "one-time evaluation affected by acute signs of withdrawal." [*Id.*] Finally, the Appeals Council found that Dr. Greer did not explain whether the functional limitations she described were based on her assessment of Barley's residual functional capacity, or if they were nothing more than a recitation of his subjective symptoms. [*Id.*]

The Appeals Council blindly accepted Dr. Greer's opinion that Barley's orthopedic impairments did not result in significant work-related limitations, while ignoring that the rest of Dr. Greer's opinion, which contradicted that statement by noting limitations related to Barley's orthopedic impairments. Moreover, the Appeals Council appeared to rely on the finding of alcohol withdrawal to find that Barley did not otherwise have work-related limitations. However, unrelated to the intention tremors noted during neurological testing, Dr. Greer also found that Barley had ataxic gait with "flailing of limbs," as well as reduced gait speed and instability. [A.R. 749-50.] Dr. Greer at no point indicated a conclusion that Barley's alcohol withdrawal symptoms caused his ataxic gait, his instability, or his limited range of motion in his left hip and right ankle. The Appeals Council improperly found that the limitations from Dr. Greer's opinion were likely the result of alcohol withdrawal, without evidence to support such a conclusion.

The Appeals Council also found that Dr. Greer "did not address whether the functional limitations she described were her assessment of the claimant's residual functional capacity, or a recitation of his subjective description of limitations." [A.R. 6.] While some of the limitations listed by Dr. Greer may be subjective symptoms reported to her by Barley, Dr. Greer also listed objective evidence. For instance, Dr. Greer noted Barley's gait to be ataxic, slow, and unstable. Based on this information, she opined that he would be unable to walk without his cane. [A.R. 749-50.] Dr. Greer also noted decreased range of motion and decreased reflexes, which were based on objective evidence and not merely Barley's subjective claims.

Moreover, characterizing Barley's range of motion as normal "throughout much of the musculoskeletal body system" is not a full view of the evidence. [A.R. 6.] While it is true that Barley showed normal function throughout most of his musculoskeletal system, he showed a greatly reduced range of motion in his left hip and right ankle, which corroborates his ataxic gait and instability. The external rotation and extension in his left hip were limited to half of what is normal, and the dorsiflexion and plantar flexion in his right ankle were also limited to half of what is normal. [A.R. 752.] Barley also had reduced reflexes of 3/5 in all extremities, as well as difficult to palpate peripheral pulses. [A.R. 749-50.] The Appeals Council did not acknowledge this decreased range of motion that corroborated Barley's difficulties with ambulating, nor did the Appeals Council acknowledge that Barley's reduced reflexes and difficult-to-

palpate peripheral pulses might affect his gait. This objective evidence would not be affected by the intention tremors.

Finally, although Dr. Greer opined that Barley's orthopedic impairments did not result in significant work-related limitations, she did not opine that they would not result in any limitations at all. Dr. Greer clearly stated that Barley could not ambulate without a cane, which may not be work-preclusive in all cases, but certainly would be a limitation. The Appeals Council incorrectly concluded that no "significant work-related limitations" translated to no limitations at all. The Appeals Council failed to build a logical bridge from the evidence in Dr. Greer's opinion to the conclusion that the RFC did not need further limitations.

Relatedly, Barley alleges that the ALJ erred in discussing Barley's need for an ambulatory device. Barley testified that he required a cane to ambulate around his house, and that he used a walker outside of the house. [A.R. 68.] The ALJ did not provide for the need for an ambulatory aid in the RFC. [A.R. 27.] The ALJ found that Barley's cane and walker were not medically necessary, as he had no muscle atrophy or muscle strength deficits, despite the walker being prescribed by a treating physician. [A.R. 29.] The ALJ also noted that Barley's cane was "merely self-prescribed." [A.R. 29.]

Social Security Regulation 96-9p notes that to find in an RFC that a hand-held assistive device is required, "there must be medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in

certain situations; distance and terrain; and any other relevant information.") The evidence in this case demonstrates Barley's gait abnormalities. The medical record show multiple falls, as well as frequent reports of abnormal gait. [A.R. 724, 750, 790, 859, 870, 891-94.] The ALJ noted that in three months – July 2016, June 2017, and July 2017 – Barley's gait was not described as ataxic or antalgic. [A.R. 29.] To corroborate this statement, the ALJ cited to thirteen exhibits. Three of those exhibits relate to a hospital visit wherein Barley was treated for fractured ribs and a pneumothorax in July 2016. [A.R. 716-726.] However, these injuries caused by a fall that resulted from Barley not having his cane while walking on his sister's porch. [A.R. 724.] While it's true that at this visit Barley's gait was not described as ataxic or antalgic, it simply was not discussed at all over the course of this visit, outside of several mentions that he used a cane or a walker to ambulate. [A.R. 729, 732.] In fact, the hospital listed him as a high risk for falls and noted that he required monitoring and assistance to ambulate with the use of a cane or a walker. [A.R. 729.]

The majority of the exhibits listed by the ALJ did not discuss Barley's gait. While they truthfully did not note his gait as being antalgic or ataxic, the ALJ improperly used the exhibits to find Barley's gait was not abnormal at these visits. These exhibits include doctor or hospital visits for other health issues unrelated to his gait instability (such as fractured ribs and hepatitis C), and his gait was not mentioned in the reports at all. [A.R. 742, 762-63, 808-09, 812, 834, 883-84.] The ALJ mischaracterizes these medical records as evidence of normal gait. These medical records do not disprove Barley's need

for an assistive device. On the contrary, multiple records support Barley's abnormal gait, decreased range of motion in his hips, pain, decreased strength, and decreased reflexes. [A.R. 821, 854-55, 859, 870, 873]. Barley also received a prescription for a walker in September 2017 from his treating physician. [A.R. 858.] I am not finding that Barley did, in fact, require an ambulatory aid. However, the ALJ improperly mischaracterized evidence in coming to his conclusion, and therefore I cannot determine that the ALJ properly considered the evidence in making his decision.

Moreover, the ALJ cites to Dr. Greer's consultative examination to substantiate the claim that Barley did not need an assistive device. [A.R. 29.] However, Dr. Greer opined that Barley could not walk without his cane, and she found that his gait was ataxic with frequent flailing of limbs. [A.R. 570.] Dr. Greer further documented gait abnormalities such as reduced speed, sustainability, and stability. [*Id.*] Since I have already determined that the ALJ and the Appeals Council erred in weighing Dr. Greer's opinion, the discussion regarding Barley's need for an assistive ambulatory device also must be revisited.

On remand, the ALJ should properly analyze Dr. Greer's opinion and Barley's alleged need for an ambulatory aid, and he should consider all of the relevant medical evidence. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Barley. He can raise those issues directly with the ALJ on remand.

**Conclusion**

For the foregoing reasons, the decision of the ALJ denying Anthony Barley's application for Social Security disability benefits is REVERSED and REMANDED for further proceedings consistent with this opinion.

SO ORDERED on October 19, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT